IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE CONVENTION OF PROTESTANT EPISCOPAL CHURCH OF THE DIOCESE OF WASHINGTON | * * * * | |
| Plaintiff | * * | |
| v. | * * | Civil No. **PJM 10-2793** |
| PNC BANK, N.A. | * * * | |
| Defendant | * * | |

**MEMORANDUM OPINION**

The Convention of Protestant Episcopal Church of the Diocese of Washington ("Diocese") has filed a Petition to Terminate Trust (the "Petition'), seeking to break a charitable trust created under the will of the late Ruth Gregory Soper ["the Trust"], currently administered by PNC Bank, N.A ("PNC" or "Trustee").[1]

PNC has filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). Earlier this year, the Court held a hearing on PNC's Motion. Having considered the arguments presented by the parties and for the reasons that follow, PNC's Motion is **DENIED**.

**I.**

Ruth Gregory Soper ("Mrs. Soper"), a resident of Maryland, died in 1973. In her will, executed in 1967, she made numerous sizeable bequests. By item IX of the will, she established

---

[1] The Petition was originally filed in the Montgomery County Circuit Court and was removed to this Court by PNC on the basis of diversity of citizenship jurisdiction, pursuant to 28 U.S.C. § 1332. The Diocese is a nonprofit corporation organized under the laws of the United States and its principal place of business is Washington, D.C. PNC is a national bank association with its principal place of business in Pennsylvania.

a Trust, naming as trustee the corporate predecessor to PNC.[2] Mrs. Soper directed the trustee to pay annuities out of the trust to three specified individual beneficiaries during their lifetimes. At such time as the three beneficiaries might die, the trustee was directed to hold and administer the Trust assets in a charitable trust and to distribute the net income of the Trust to the Diocese in her memory.

The relevant provision of the will reads:

> After the death of my said sister, or after my death if she shall not survive me, my trustee shall pay over in convenient installments, such of the net income arising from this trust fund as shall not be needed from time to time to fulfill the provisions hereinbefore contained, and after the death of the last survivor of the annuitants hereinbefore named, all thereof which shall not be needed in the maintenance of the mausoleum as hereinbefore provided, unto The Convention of the Protestant Episcopal Church of the Diocese of Washington, and its successors, a corporation organized and existing pursuant to an Act of Congress, with headquarters at present at the Diocesan House, No. 1702 Rhode Island Avenue, Northwest, Washington, D.C. I request that said Diocese identify the income received by it hereunder as "the Ruth Gregory Soper Memorial."

In 1975, after Mrs. Soper died, but with the consent of each of the beneficiaries, including the Diocese, the Trust was amended to preserve the charitable deduction to the Trust, which otherwise might have been lost by reason of changes in the federal tax laws.[3] As part of the 1975 Amendment, the following spendthrift clause was inserted:

---

[2] The original Trustee was Riggs National Bank of Washington, D.C. PNC Bank became the Trustee in 2005.

[3] Under the Internal Revenue Code ("IRC") of 1954, an estate could avail itself of a charitable deduction computed on the actuarial value of the remainder interest in the trust. The Tax Reform Act of 1969 amended the IRC to provide that, in the case of a charitable bequest of a remainder interest, if a beneficiary other than a charity were given an intervening interest such as a life estate, no charitable deduction would be allowed unless the remainder interest were a charitable remainder annuity trust or a charitable remainder unitrust as defined by Section 664 of the IRC. *See* 26 U.S.C. § 2055(e)(2)(A) and § 664(d); *see also*, *Oxford Orphanage, Inc. v. United States*, 775 F.2d 570, 571 (4th Cir.1985). Many testators, however, did not write or revise their wills to satisfy the new stringent requirements in order to preserve the charitable deduction. *Id*. In response, Congress amended Section 2055(e). This amendment permitted estates of decedents

2

> (16) <u>Prohibition Against Alienation</u>. The interests of beneficiaries in principal or income shall not in any way be voluntarily or involuntarily alienated or encumbered.

The 1975 Amendment also added a charitable use provision that states:

> (9) <u>Charitable Use Provision</u>. In the event the Convention of the Protestant Episcopal Church of the Diocese of Washington or its successors, is not an organization described in Sections 170(c) and 2005(a) at the time when any principal or income of the trust is to be distributed to it, the trustee shall distribute such principal or income to or for the use of an organization or organizations which are described in the said Sections 170(c) and 2055(a) or retained for such use.

The three individual beneficiaries of the Trust have died. In the intervening years since their deaths, the trust corpus has grown to approximately $23 million, and the Trustee has made distributions to the Diocese pursuant to the terms of the Trust. PNC, as trustee, continues to receive fees for the management of the Trust of the order of $143,000 in 2008 and $98,000 in 2009, including fees paid to its outside financial advisors.

## II.

In support of its Petition to terminate the Trust, the Diocese alleges that (1) it is the sole beneficiary interest of the assets of the Trust and, as such, it in effect has the consent of all beneficiaries to terminate the Trust, (2) termination would not be inconsistent with the settlor's charitable intent; (3) the continued payment of administrative fees to PNC burdens the Trust and its sole charitable beneficiary; and (4) the spendthrift provision of the Trust does not prevent

---

dying after December 31, 1969 who had wills executed prior to September 30, 1974, which did not qualify as a charitable remainder annuity or unitrust under Section 664 of the IRC, to qualify for a charitable deduction by amending or conforming the trust to make it a charitable remainder unitrust (described in section 664), or a pooled income fund (described in section 642(c)(5)). *See* 26 U.S.C. § 2055(e)(3). Under the corresponding Maryland statute, the trustee of a charitable remainder trust created after July 31, 1969 could, "with the consent of each beneficiary named in the governing instrument, without application to any court, [] amend the governing instrument to conform to the provision of § 664 of the Internal Revenue Code by executing a written amendment to the trust for the purpose." Md. Est. & Trusts Code Ann. § 14-304.

termination because it was added after Mrs. Soper's death to conform the Trust with applicable tax laws.

PNC, in its Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(7), argues that the Diocese's Petition should be dismissed because (1) the Diocese does not have the unanimous consent of all potential beneficiaries to terminate the Trust, or as to unascertained parties, it does not have the consent of the Maryland Attorney General; (2) the Diocese has failed to join the Attorney General of Maryland, who according to PNC, is a necessary party to this action; and (3) the Trust contains a valid spendthrift clause that, as a matter of law, precludes termination of the Trust, even with the unanimous consent of the beneficiaries.

### III.

PNC first alleges that the Petition should be dismissed because the Diocese does not have unanimous consent to terminate the Trust from all potential beneficiaries. According to PNC, the Diocese is entitled to receive distributions of net income from the Trust only as long as it exists and only so long as it qualifies as a charitable organization under the pertinent tax laws. Otherwise, under the terms of the Trust, PNC may become obliged to make distributions to one or more successor beneficiaries. PNC points to the following language of the charitable use provision in support of this position:

> In the event the [Diocese] or its successors, is not an organization described in Sections 170(c) and 2005(a) at the time when any principal or income of the trust is to be distributed to it, the trustee shall distribute such principal or income to or for the use of an organization or organizations which are described in the said Sections . . .

Since the Trust provides a beneficial interest for one or more successor charitable organizations which have not yet been selected, these unascertained beneficiaries must be represented by the

4

Maryland Attorney General.[4] Because the Attorney General has not given his consent, PNC argues, the Petition must be dismissed as a matter of law under Fed. R. Civ. P. 12(b)(6). Moreover, says PNC, the Maryland Attorney General is a necessary party under Fed. R. Civ. P. 19(a) and the failure to join him requires dismissal per Fed. R. Civ. P. 12(b)(7).[5] These arguments are easily dispatched.

Whether the Maryland Attorney General must consent to this proceeding or be joined as a necessary party are now moot questions. The Court, through correspondence with the Attorney General's office following oral argument by the parties, has received word from the Attorney General, who in his words, has indicated that he "does not regard himself as a necessary party . . . and does not intend to participate as a party" in this proceeding. Accordingly, nothing more need be said about having to have his consent to or participation in this proceeding.

---

[4] The Maryland Attorney General has a common law and statutory responsibility to protect the public interest in charitable trusts. *See* Md. Est. & Trusts Code Ann. § 14-301(a) ("Courts of equity have full jurisdiction to enforce trusts for charitable purposes upon suit of the State by the Attorney General or suit of any person having an interest in enforcement of the trust."). *See also*, RESTATEMENT (THIRD) OF TRUSTS § 28 cmt. c. ("Charitable trusts are ordinarily enforceable upon suit by the Attorney General, as representative of the community . . ."). When a petition to modify or terminate a charitable trust is filed, the Attorney General, as an interested party, is served with a copy of the petition and a show cause order. In this manner, the state court can ascertain if the Attorney General objects to the proposed modification or termination of a charitable trust.

[5] Under Fed. R. Civ. P. 12(b)(7), a court may dismiss an action for failure to join a necessary party. A party is necessary if "in that person's absence, the court cannot afford complete relief among existing parties." Fed. R. Civ. P. 19(a). When a motion to dismiss is filed under Rule 12(b)(7), the court must determine whether a party is necessary to the action. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999).

## IV.

Must the Petition be dismissed for lack of consent of all potential beneficiaries, as PNC argues?[6]

Although PNC raises this argument as part of a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), not only is it not well taken at this juncture; it seems virtually certain to fail on the merits. The Diocese is the only residual beneficiary named in Mrs. Soper's will. It cannot be said that she ever contemplated the possibility of successor beneficiaries since the charitable use provision referring to possible successor beneficiaries was executed solely for tax purposes after her death, as § 2055(e)(2)(A) of the IRC permits.[7] Moreover, the possibility that the Protestant Episcopal Church, which the Court judicially notices dates back to pre-Revolutionary War times in America and previously as part of the Church of England to centuries before that, might cease its existence or lose its eligibility as a charity is unlikely in the extreme. In other words, not only did Mrs. Soper not contemplate beneficiaries beyond the Diocese, the likelihood that one would ever come into being is virtually nil. Apart from the Diocese, then, as a practical matter, there appear to be no other potential beneficiaries, known or unknown, that would need to consent to the termination of the Trust.[8]

---

[6] Somewhat ironically, in its Notice of Removal [Document No. 1], PNC states that "[t]he Diocese is the sole remaining beneficiary of the Ruth Gregory Soper Trust" and that "[t]here are no other defendants to this civil action from which to obtain consent to the removal of this action."

[7] See discussion *supra* note 3.

[8] The Maryland Attorney General in his correspondence with the Court has expressed a similar view: "the Attorney General does not regard [the successor-beneficiary provisions added in 1975] as necessary to effectuate Mrs. Soper's presumed charitable intent, as manifested in her original will, which was to benefit the Episcopal Diocese. . . . Moreover, the Attorney General believes that the prospect of the Episcopal Diocese ceasing to exist as a charitable organization is too remote and speculative to justify the Attorney General's participation in this proceeding on behalf of hypothetical successor charitable beneficiaries."

# V.

PNC's third argument is that the Trust contains an enforceable spendthrift clause that precludes termination of the Trust as a matter of law. The Court has already discussed this argument indirectly, but addresses it here head-on.

If all of the beneficiaries of an irrevocable trust consent, they can compel the termination of the trust, unless termination would be inconsistent with a material purpose of the trust. *See* RESTATEMENT (THIRD) OF TRUSTS § 65 (2003); *see also*, *In re Trust of Lane*, 323 Md. 188, 193 (1991). A spendrift clause may provide an "indication that the settlor had a material purpose . . . that would be inconsistent with allowing the beneficiaries to terminate the trust. RESTATEMENT (THIRD) OF TRUSTS § 65 cmt. e. In Maryland, spendthrift provisions have sometimes prevented the termination of a trust by unanimous consent as a matter of law. *See Mahan v. Mahan*, 577 A.2d 70, 76-77 (Md. 1990); *Kirkland v. Mercantile-Safe Trust Co.*, 145 A.2d 230 (Md. 1958). In *Kirkland* and in *Mahan*, the courts found that the original trust as signed by the settlor, contained a spendthrift provision and held, on that basis, that terminating the trust would violate the settlors' intent and material purpose. *See Mahan*, 145 A.2d at 76-77; *Kirkland*,[9] 145 A.2d at 233; *see also In re Trust of Lane*, 592 A.2d at 495.

Spendthrift restrictions, however, "are not sufficient in and of themselves to establish, or to create a presumption of, a material purpose that would prevent termination by consent of all of the beneficiaries" in particular because "a spendrift clause may [have been] included as a routine or incidental provision of a trust (unimportant or even unknown to the settlor)." RESTATEMENT

---

[9] Additionally, the *Kirkland* court upheld the spendthrift provision as a valid restraint on alienation, in part, "to assure the maximum annual income" of the trust, by protecting the trust's assets from the beneficiaries' creditors and from beneficiaries' irresponsible use of the trust assets. 145 A.2d at 233.

(THIRD) OF TRUSTS § 65 cmt. e. A court's overarching goal is to protect the settlor's intent. *See Mahan* 145 A.2d at 76-77.

In this case, the prohibition against alienation clause was added two years after Mrs. Soper's death as part of the 1975 Amendment to the Trust. The record is clear that the Amendment was made with the specific purpose of conforming the Trust to federal tax laws. As such, unlike the settlors in *Kirkland* and in *Mahan*, Mrs. Soper herself did not include restrictions on alienation as one of the conditions of the Trust. The Court holds that the Trust's prohibition against alienation, having been introduced after Mrs. Soper's death, does not suffice to establish that terminating the Trust would be inconsistent with a material purpose of the Trust.

## VI.

For the foregoing reasons, PNC's Motion to Dismiss is **DENIED**. The Diocese will be **ORDERED** to file a Motion for Summary Judgment within thirty (30) days.

A separate Order will **ISSUE**.

June 6, 2011

               /s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**